UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND ZONG, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED, a wholly owned subsidiary of Bank of America, | : : : | |
| | : | No. 13-cv-03256 |
| Defendant. | : | |

**M E M O R A N D U M**

Defendant Merrill Lynch, Pierce, Fenner & Smith Incorporated's ("Merrill") filed a Motion to Enforce Settlement. Plaintiff Raymond Zong ("Zong") has filed a response in opposition, and on August 6, 2014, I heard oral argument on the motion. The parties have consented to my jurisdiction under 28 U.S.C. § 636. (Doc. Nos. 52, 54, 55). For the reasons set forth in detail below, Merrill's Motion to Enforce Settlement will be granted.

**I.    FACTUAL BACKGROUND**

On June 12, 2013, Zong filed a complaint alleging Title VII race discrimination and retaliation pursuant to 42 U.S.C. §§ 2000, *et seq.* (Doc. No. 1).[1] On May 27, 2014, Merrill and Zong reached an initial settlement agreement. Def.'s Mem. of Law in Supp. of Mtn. to Enforce Settlement at 3 ("Def.'s Mem."). Merrill forwarded to Zong a proposed settlement agreement that reflected the agreed upon terms. *Id.* On May 31,

---

[1] An Amended Complaint was filed on July 3, 2013, adding a claim under the Pennsylvania Human Relations Act, 43 P.S. § 951. (Doc. No. 2). A Second Amended Complaint was filed on November 13, 2013, adding a claim for violation of the Wage Payment and Collections Act, 43 P.S. 260.1, *et. seq.*, and a claim for Breach of Contract. (Doc. No. 9).

2014, counsel for Zong notified Merrill that Zong refused to sign the settlement agreement for a variety of reasons.[2] *Id.* District Court Judge Jeffrey L. Schmehl then referred this case to me so that the parties could pursue further settlement discussions. (Doc. No. 24).

On June 23, 2014 I conducted a settlement conference with the parties. At that conference, after lengthy discussions, the parties agreed to terms of a new settlement, including an increased settlement payment for Zong. 6/23/14 Tr. at 3 (Settlement Conf.); *see* Def.'s Mem. at 2. The agreed upon terms were placed on the record, and the parties stated their intent to reduce the terms of the settlement to writing. 6/23/14 Tr. at 3-6. The Court, Zong's attorney, and defense counsel all took great pains to ensure that Zong fully understood and acquiesced to the terms of the settlement. *Id.* at 6-10.

On June 24, 2014, the day after the settlement conference, I received an email from Zong. (Doc. No. 37, Ex. A). The email alleged that Zong's attorney cheated and misinformed both me and Zong regarding a component of the settlement, and that Zong was thereby misled into settlement.[3] *Id.* The email asked if I could "please help cancel

---

[2] According to the defense, Zong's attorney notified them on May 31, 2014 that "Zong was refusing to sign the Agreement because he did not want (i) taxes withheld from settlement; (ii) to release his second EEOC Charge of Discrimination for retaliation (even though he has never pursued such a claim); and (iii) to release any classwide claims (even though he is not a member to any class action)." Def.'s Mem. at 2.

[3] Zong's attorney, Andrew Cotlar filed a Motion to Withdraw as counsel on May 15, 2014. (Doc. No. 29). This case was referred to me on June 5, 2014. (Doc. No. 32). On July 1, 2014, after a hearing, I granted attorney Andrew D. Cotlar's Motion to Withdraw. During the hearing, the relationship between Zong and Cotlar was characterized as "irretrievably broken[.]" 7/1/14 Tr. at 3 (Motion hearing). I gave Zong ten days, until July 11, 2014, to hire new counsel to represent him at the then-scheduled July 16, 2014 hearing on the Motion to Enforce Settlement. *Id.* at 14-15 (setting new deadlines). That hearing ultimately was rescheduled until August 6, 2014. (Doc. No. 48).

the [sic] yesterday's settlement agreement and keep it open for new negotiation." *Id.* This marked the second occasion since May 2014 on which Zong had committed to settling this case and then had second thoughts. *See* 8/6/14 Tr. at 9-10. At the heart of Zong's allegation of cheating and misleading was the status of his remaining EEOC claim for retaliation.[4]

Zong's attorney *initially* had informed Zong during the course of the day's negotiations, on June 23, 2014, that the EEOC had completed its investigation, would not be pursuing the case, and would issue a "right to sue" letter. *See* 8/6/14 Tr. at 20-21. After the settlement conference, thinking he had confused Zong's case with another case, Zong's attorney retracted his statement, and told Zong that the EEOC had not, in

---

The day before the hearing on the Motion to Enforce Settlement, August 5, 2014, Zong filed a renewed motion for an extension of time to hire an attorney. (Doc. No. 49). I denied this motion at the August 6, 2014 hearing. 8/6/14 Tr. at 9. A number of factors supported my decision. First, Cotlar is already Zong's second attorney in this barely year-old litigation. Second, during my brief involvement in the case, I have witnessed Cotlar skillfully and ably represent Zong, and negotiate a favorable settlement for Zong. *See Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir. 1985) ("The standard of care to which an attorney must adhere is measured by the skill generally possessed and employed by practitioners of the profession."). There appears to me no objective basis to quarrel with the high quality of his representation, or to seek new counsel. Mr. Zong's allegations that Mr. Cotlar mislead and "cheated" him are not borne out by the facts. Third, Zong had more than a month, between June 24, 2014 and the hearing on August 6, 2014, to hire an attorney to represent him at the hearing on the motion to enforce the settlement. I was quite clear with Mr. Zong that he should attend promptly to representation for that hearing, and told him that if his newly hired attorney needed additional time to prepare for the hearing, I would carefully consider such a request. *See* 7/1/14 Tr. at 6-10, 12. That he was not able to hire an attorney within the almost six weeks between June 24, 2014 and August 6, 2014 convinced me that granting additional time would not overcome his difficulties in procuring an attorney to represent him. Fourth, at this point there is no lawsuit left in which to represent Zong. On June 23, 2014, Zong and Merrill agreed to settle the matter, as I have found in this opinion. Granting an extension of time to a party to find and hire a lawyer to represent him in a lawsuit that the party has already agreed to settle is pointless.

[4] At the time of the June 23, 2014, settlement conference the EEOC had already declined to pursue Zong's race discrimination claim, and had issued a "right to sue" letter. Only Zong's retaliation claim remained as a potential claim for the EEOC to pursue.

fact completed its investigation. 8/6/14 Hrg. Zong Ex. 2 (6/24/14 Cotlar email). However, after reviewing his file again, Zong's attorney realized that he was, in fact, correct the first time. The EEOC had completed its investigation of Zong's retaliation claim, had decided it would not pursue that claim, and had informed counsel it *would be issuing* a "right to sue" letter with regard to that claim. 8/6/14 Tr. at 20-22; Court Ex. 1. Zong's attorney immediately relayed this information to Zong. 8/6/14 Hrg. Court Ex. 1.[5]

Following Zong's June 24, 2014, email communication to the Court, Merrill filed a Motion to Enforce Settlement. (Doc. No. 39; *see* Doc. No. 37). Zong timely filed an opposition to this motion. (Doc. No. 46). On August 6, 2014, after briefing by the parties, I conducted a hearing on the Motion to Enforce Settlement. Importantly, Zong agreed that he had told the truth at the June 23, 2014 hearing when he agreed on the record to the terms of the settlement:

> Q: Mr. Zong, I want you to turn to page 6 of the transcript there. . . . And, I'm going to read my question to you. "Do you understand the terms of this agreement that have been negotiated this morning?" And, then it says – Mr. Zong, what did you say? Would you read that please?
>
> A: "Yes."
>
> Q: All right. And, the next line is 6. "And do you agree to those terms as they've been outlined by your attorney and by the attorney for the defendants?" And, tell me what did you say? Lines 9 and 10, read that to me please.
>
> A: "Those terms, yes, Your Honor, and also counsel discussed them."
>
> Q: All right. Now turn to page 7. And, at line 9, I'm going to read my question to you, and then I'll ask you to read my answer – or your answer. "And, do you agree to the terms?" Please read your answer at 10.

---

[5] Zong left this final email communication out of the information he presented to me in his June 24, 2014 email, creating a misleading account of what transpired.

>   A:   "Yeah, agreed." . . . .
>
>   . . . .
>
>   Q:   Mr. Zong, my question to you now, and you don't need to read the transcript. Now I'm asking you a question here. At the time when you told me that you agreed to the terms of the settlement agreement, were you telling me the truth?
>
>   A:   Yes.
>
>   Q:   You did agree at that time, is that correct?
>
>   A:   Yes.

8/6/14 Tr. at 68-69.

## II.   DISCUSSION

The issue before the court on Merrill's Motion to Enforce Settlement is whether the oral agreement, placed on the record at the conclusion of the June 23, 2014 settlement conference, is a binding and enforceable settlement agreement. Preliminarily, I must determine whether federal common law or state contract law controls this question. For the reasons set forth below, I find that federal common law applies, and that the oral settlement agreement is binding and enforceable. Defendant's Motion to Enforce Settlement will be granted.

### A.   Choice of Law

A settlement agreement is a contract. *Marine Midland Realty Credit Corp. v. LLMD of Michigan, Inc.*, 821 F. Supp. 370, 373 (E.D. Pa. 1993) ("Settlement agreements between parties are contracts between the parties and contract principles are generally applicable to their construction."). Accordingly, I must first determine what law controls the formation and interpretation of the alleged oral settlement agreement here. In *Three Rivers Motors Company v. Ford Motor Company*, 522 F.2d 885 (3d Cir. 1975), the

Third Circuit provided a thorough discussion of this choice of law issue. The case involved an appeal from the District Court for the Western District of Pennsylvania's refusal to apply a general release in an antitrust case. The Court of Appeals started its consideration of this issue with the question of whether federal common law or state law applied to the release in a federal antitrust action. *Id.* at 888.  Recognizing that although antitrust actions were created by federal law, federal law did not necessarily control all facets of an antitrust case, the Court discussed the role of federal law:

> Federal law is generally interstitial in its nature. It rarely occupies a legal field completely, totally excluding all participation by the legal systems of states. This was plainly true in the beginning when the federal legislative product (including the Constitution) was extremely small. It is significantly true today, despite the volume of Congressional enactments, and even within areas where Congress has been very active. Federal legislation, on the whole, has been conceived and drafted on an Ad hoc basis to accomplish limited objectives. It builds upon legal relationships established by the states, altering or supplanting them only so far as necessary for the special purpose. Congress acts, in short, against the background of the total Corpus juris of the states in much the way that a state legislature acts against the background of the common law, assumed to govern unless changed by legislation.

*Id.* (citing HART AND WECHSLER, THE FEDERAL COURTS AND FEDERAL SYSTEM, 470-71 (2d ed. 1973). The Court of Appeals then noted that because the case before it dealt with the operation of a federal statute, "federal courts are Competent [sic] to interpret the release without regard to state law." *Id.* at 889. Then, finding that there was no federal law for interpreting antitrust releases, it was the job of the Court of Appeals to determine "whether the statutory policies embodied in the antitrust laws will be better promoted by the absorption of state laws regarding release or the formulation of a federal rule." *Id.*

Next, the Court articulated the factors it deemed relevant to the choice of law issue. Those factors were: "the need for a uniform federal rule, the extent to which the

transaction in question fits within the normal course of activities regularly governed by state law, and the possibility of the state rule frustrating the operation of the federal statutory scheme." *Id.* at 889-90. Ultimately, upon completing the analysis, the Court of Appeals determined that in the case at hand, Pennsylvania law should apply. Importantly, the Court noted that "[a] federal court would still be permitted, however, to reject the rule of a particular state whose doctrine on the interpretation of releases is not entirely consistent with federal antitrust objectives." *Id.* at 892. Thus, *Three Rivers Motors* established a framework for determining the choice of law issue on a case by case basis, without creating a bright line rule.

There is a body of federal law, albeit not in this Circuit, that counsels that Federal common law should control the enforcement of settlement agreements in Title VII cases. *See, e.g., Snider v. Circle K Corp.,* 923 F.2d 1404, 1407 (10th Cir. 1991) ("[f]ederal common law governs the enforcement and interpretation of [Title VII settlement] agreements"); *Taylor v. Gordon Flesch Co.,* 793 F.2d 858, 862 (7th Cir. 1986) ("federal law governs the enforceability of settlements in Title VII actions"); *Brewer v. Muscle Shoals Bd. of Educ.,* 790 F.2d 1515, 1519 (11th Cir. 1986) (predetermination settlement agreement under Title VII is governed by federal common law); *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir. 1981) (federal common law governs enforceability of settlements in Title VII cases); *EEOC v. Local* 638, 674 F. Supp. 91, 100 (S.D.N.Y. 1987) (enforceability of Title VII agreement to be decided under federal common law).

In *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207 (5th Cir. 1981), finding that federal common law governs the enforceability of a settlement agreement under Title VII, the Fifth Circuit noted:

7

> Since this case deals with the operation of a Congressional statutory scheme, the federal courts are competent to determine whether a settlement exists without resort to state law.... Creation of a federal rule rather than absorption of a state rule is appropriate where, as here, the rights of the litigants and the operative legal policies derive from a federal source. No significant state interest would be served by absorbing state law as the rule of decision governing Title VII settlement agreements. On the other hand, Louisiana's requirement that settlement agreements be reduced to writing might hamper a significant federal interest, since Congress has mandated a policy of encouraging voluntary settlement of Title VII claims .... It bears noting, finally, that the Supreme Court has already established prerequisites to the validity of settlement agreements in Title VII suits ....

*Id.* at 1209 (citations omitted).

The rationale of the Fifth Circuit in *Fulgence* is both persuasive and consistent with that of the Third Circuit in *Three Rivers Motors*. That there would be no difference here between the application of Pennsylvania law and Federal common law,[6] though a

---

[6] I note that Pennsylvania law would require the same result, if applied. In *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 518 (Pa. Super. 2009), the Pennsylvania Superior Court described relevant Pennsylvania precedent as follows:

> The law of this Commonwealth establishes that an agreement to settle legal disputes between parties is favored. *Compu Forms Control Inc. v. Altus Group Inc.,* 574 A.2d 618, 624 (Pa. Super. 1990). There is a strong judicial policy in favor of voluntarily settling lawsuits because it reduces the burden on the courts and expedites the transfer of money into the hands of a complainant. *Felix v. Giuseppe Kitchens & Baths, Inc.,* 848 A.2d 943, 946 (Pa. Super. 2004). If courts were called on to re-evaluate settlement agreements, the judicial policies favoring settlements would be deemed useless. *Greentree Cinemas Inc. v. Hakim,* 432 A.2d 1039, 1041 (Pa. Super. 1981). Settlement agreements are enforced according to principles of contract law. *Pulcinello v. Consolidated Rail Corp.,* 784 A.2d 122, 124 (Pa. Super. 2001), *appeal denied,* 796 A.2d 984 (Pa. 2002). "There is an offer (the settlement figure), acceptance, and consideration (in exchange for the plaintiff terminating his lawsuit, the defendant will pay the plaintiff the agreed upon sum)." *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick,* 587 A.2d 1346, 1349, *cert. denied,* 502 U.S. 867, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991).

happy accident, does not undermine the rationale. Indeed, the fact that one result would have applied to the Title VII litigant in *Fulgence* under Louisiana law, and a different result to a similarly situated Title VII litigant were Pennsylvania law to apply, underscores the importance of applying federal common law. The settlement of claims arising under federal law, in federal court, should not be subject to the vagaries of state contract law. Accordingly, federal common law will control here.

## B. The Settlement Should Be Enforced

Zong argues that the oral settlement agreement should not be enforced because during the settlement negotiations, his lawyer "cheated and misinformed" him by advising him that the EEOC had issued a "right to sue" letter for his pending retaliation claim against Merrill. As part of the final settlement, Mr. Zong agreed to release Merrill from all pending and future claims. Part of this analysis, he contends, was based on the issuance of the "right to sue letter" signifying that the EEOC would not be pursuing his retaliation claim against Merrill. As such, the claim was theoretically not particularly strong and, therefore, worth less in terms of settlement value. In reality, however, at the time of the June 23, 2014 settlement conference, the EEOC had not yet issued a right to

---

Where a settlement agreement contains all of the requisites for a valid contract, a court must enforce the terms of the agreement. *McDonnell v. Ford Motor Co.,* 643 A.2d 1102, 1105 (Pa. Super. 1994), *appeal denied,* 652 A.2d 1324 (Pa. 1994). This is true even if the terms of the agreement are not yet formalized in writing. *Mazzella v. Koken,* 221, 739 A.2d 531 536 (Pa. 1999); *see Commerce Bank/Pennsylvania v. First Union Nat. Bank,* 911 A.2d 133, 147 (Pa. Super. 2006) (stating "an agreement is binding if the parties come to a meeting of the minds on all essential terms, even if they expect the agreement to be reduced to writing but that formality does not take place."). Pursuant to well-settled Pennsylvania law, oral agreements to settle are enforceable without a writing. *Pulcinello, supra* (citing *Kazanjian v. New England Petroleum Corp.,* 480 A.2d 1153, 1157 (Pa. Super. 1984)).

sue letter in Mr. Zong's retaliation case. Instead, Zong's attorney had been informed by the EEOC that their investigation was complete and a "right to sue letter" *would* issue.[7] Zong attempts to cast these facts in a sinister light, but they are benign.

Based upon the alleged misinformation he received, Zong refused to sign the written memorialization of the June 23, 2014 oral settlement agreement. Despite refusing to sign the agreement, Zong nonetheless now attempts to invoke provisions within the proposed written settlement agreement that would give him time to review the written settlement contract with a lawyer, and a brief opportunity to withdraw from the agreement if he so chose.[8] *See* 8/6/14 Tr. at 81. Because he refused to sign the written version of the settlement, I find that document to be immaterial to my consideration of the Motion to Enforce Settlement. The only agreement between the

---

[7] Indeed, the letter had issued by the time of the August 6, 2014 hearing on the Motion to Enforce Settlement. 8/6/14 Tr. at 25.

[8] In relevant part, the unexecuted written agreement provides as follows:

> IT IS IMPORTANT THAT ZONG COMPLETELY UNDERSTAND THE TERMS AND CONDITIONS OF THIS AGREEMENT. IF THERE IS LANGUAGE ZONG DOES NOT UNDERSTAND, ZONG IS ENCOURAGED TO ASK ABOUT IT. ZONG MAY TAKE UP TO TWENTY-ONE (21) DAYS TO DECIDE TO ACCEPT THE PAYMENTS AND BENEFITS PROVIDED IN THIS AGREEMENT AND SIGN THIS AGREEMENT OR REJECT THESE PAYMENTS AND BENEFITS AND NOT SIGN THIS AGREEMENT. ZONG AGREES THAT ANY CHANGES TO THE AGREEMENT THAT MAY BE NEGOTIATED BETWEEN ZONG OR ZONG'S ATTORNEY AND MERRILL LYNCH, WHETHER MATERIAL OR IMMATERIAL, WIL NOT RESTART THE TIME ZONG HAS TO CONSIDER AND SIGN THIS AGREEMENT. <u>ZONG HAS SEVEN (7) DAYS AFTER SIGNING THIS AGREEMENT TO REVOKE THIS AGREEMENT, BUT MUST DO SO IN A WRITING DELIVERED WITHIN THE SEVEN (7) DAY PERIOD</u> . . . .

Unexecuted Written Settlement Agreement ¶ 20 (emphasis in original).

parties relevant to the instant motion is that made before me, on the record, in court, on June 23, 2014.

There are strong policy reasons for courts to encourage and support settlements, especially in Title VII cases. *See Dent v. St. Louis-San Francisco Ry. Co.*, 406 F.2d 399, 402 (5th Cir. 1969) ("Thus it is quite apparent that the basic philosophy of these statutory provisions is that voluntary compliance is preferable to court action and that efforts should be made to resolve these employment rights by conciliation both before and after court action."); *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496, 498 (5th Cir. 1968) ("It is thus clear that there is great emphasis in Title VII on private settlement and the elimination of unfair practices without litigation.").

Great lengths were taken to reach a fair settlement of this matter, and to ensure that Mr. Zong understood and accepted all of the terms of the settlement agreement. 6/23/14 Tr. at 6-10 (colloquy); *see* 8/6/14 Tr. at 10-13. According to the Restatement of Contracts, "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof . . . ."

RESTATEMENT (SECOND) OF CONTRACTS § 27 (1981). Comment "a" further advises:

> Parties who plan to make a final written instrument as the expression of their contract necessarily discuss the proposed terms of the contract before they enter into it and often, before the final writing is made, agree upon all the terms which they plan to incorporate therein. This they may do orally or by exchange of several writings. It is possible thus to make a contract the terms of which include an obligation to execute subsequently a final writing which shall contain certain provisions. If parties have definitely agreed that they will do so, and that the final writing shall contain these provisions and no others, they have then concluded the contract.

*Id.*

Here, it is without question that the parties orally agreed upon all material terms of the settlement contract, and expressed their assent to all terms of the contract, on the record, in court, on June 23, 2014. See 6/23/14 Tr. at 3-11 (placing material terms of settlement on the record).  The fact that a written settlement agreement was envisioned but has not been signed is immaterial.  *See Reed v. American Foods Equip. Co.*, No. 92-5057, 1994 U.S. Dist. LEXIS 3114, at *2 (E.D. Pa. 1994) (citing *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970)) ("An agreement to settle a lawsuit, voluntarily entered into is binding upon the parties, whether or not made in the presence of the Court and even in the absence of a writing."); *see also Glass v. Rock Island Refining Corp.*, 788 F.2d 450 (7th Cir. 1986) (upholding oral settlement agreement in Title VII case where plaintiff entered into oral settlement then changed his mind and wanted to withdraw); *Lyles v. Commercial Lovelace Motor Freight, Inc.*, 684 F.2d 501, 504 (7th Cir. 1982) (under federal law, oral settlements are enforceable).

A valid oral agreement was entered into. The fact that the parties intended to reduce the agreement to writing and then failed to do so is immaterial. The settlement agreement should be enforced.

### III. CONCLUSION

Based upon the foregoing, Merrill's Motion to Enforce Settlement will be GRANTED and this case will be DISMISSED WITH PREJUDICE.

BY THE COURT:

*s/Richard A. Lloret*
RICHARD A. LLORET
U.S. Magistrate Judge